**UNITED STATES of America, Plaintiff,**

v.

**Thompson B. SANDERS, Daniel Dewey, David Lee Pelleu and Daniel Kolton, Defendants.**

**No. 88 CR 104.**

United States District Court, N.D. Illinois, E.D.

June 14, 1988.

James Conway, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Steven Senderowitz, Chicago, Ill., for Sanders.

Michael Pasano, Zuckerman Spaeder Taylor & Evans, Coral Gables, Fla., for Dewey.

Luis Galvan, Federal Defender Program, Chicago, Ill., for Pelleu.

Michael Sher, Chicago, Ill., for Kolton.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Currently before the Court is the government's motion to disqualify one of defendant Thompson B. Sanders' counsel, Scott Lassar. For the reasons stated below, we grant that motion. Attorney Lassar has previously represented Sanders' co-defendant Daniel Dewey during the grand jury phase of this case and through Dewey's initial appearance (although Dewey failed to appear personally). Dewey is currently represented by Michael Pasano.

At this point in time, it is unknown whether Dewey will proceed to trial or plead guilty, cooperate and testify on behalf of the government against Sanders. The government argues that whichever choice Dewey makes, Lassar is faced with an impermissible conflict of interest which requires his disqualification. We agree. If Dewey proceeds to trial, the government indicates that it intends to call Lassar as a witness concerning Dewey's notice of the indictment and his subsequent flight. This prospect raises the first conflict we see in this case. Under DR 5–102(B), if a lawyer learns that he is to be called as a witness and that his testimony "is or *may be* prejudicial to his client," he shall withdraw. Lassar argues that his testimony as to Dewey's flight would only be prejudicial against Dewey. We disagree. Dewey and Sanders are charged in a joint conspiracy. The flight of one co-conspirator "may be" incriminating as to all conspirators. Thus, Lassar's potential testimony "may be" prejudicial to Sanders.[1]

---

1. Lassar argues that he will never actually testify because Dewey will "probably" stipulate to this information (and the government will accept this stipulation), or because of other speculative reasons, evidence of flight will not be admitted. As Lassar readily recognizes, he cannot bind Dewey's counsel, and Lassar's specula-

On the other hand, if Dewey decides to cooperate with the government, Lassar is faced with a conflict of interest between his obligation to his current client, Sanders, and his ethical obligation to his previous client, Dewey. He will be in a position to cross examine his old client on a matter in which he represented that client. The dangers are that he will impermissibly use information acquired during his previous representation, or that in an effort to avoid that problem, he will overcompensate to the detriment of his current client. Lassar states in his memorandum, but not by affidavit, that no confidential communications "of bad conduct unrelated to the indictment" were disclosed to him in the course of his representation of Dewey. There is, however, no such support for that statement from Dewey. Nor has Dewey agreed to waive any conflicts or privileges and allow Lassar to represent Sanders. Nor has Sanders agreed to such a waiver. Additionally, "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand." *Wheat v. United States*, — U.S. —, —, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988). Thus, although Lassar may think he learned nothing that would be useful in cross-examining Dewey, it may be next to impossible to predict with certainty that such is the case.

Finally, Lassar represents to the Court that he will not cross-examine Dewey, that Sanders' first and apparently principal counsel, Stephen J. Senderowitz, will conduct the cross-exam. We are not sure that this will be quite the miracle cure that Lassar seems to think it will be. This is not a situation where Lassar is merely an uninvolved member of Senderowitz's law firm. Rather, Lassar is an active member of Sanders' trial team whose goal must be to discredit Dewey as a government witness. Although only twenty-twenty hindsight will tell us for certain whether a conflict occurs, we conclude the better course of action is to disqualify Lassar from representing Sanders. Because Sanders' original counsel, Senderowitz, is still actively representing him, Sanders' Sixth Amendment interest in counsel of his choice is not implicated by this decision. Sanders still has the counsel of his choice; he just does not have *two* counsel of his choice. His experienced, initial and principal counsel is fully capable of representing Sanders without Lassar's assistance. "The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, — U.S. at —, 108 S.Ct. at 1700. "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.*

Because we conclude that the government has made a showing of a serious potential for a conflict in this case whether Dewey goes to trial or is a witness, Dewey's former counsel, Scott Lassar, is disqualified from representing Sanders. It is so ordered.

tion as to what will happen is only that, specula-

